## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
## Judge Nina Y. Wang

Civil Action No. 24-cv-00917-NYW-NRN

JOSEPH BOWEN,

    Plaintiff,

v.

CITY AND COUNTY OF DENVER, DENVER SHERIFF DEPARTMENT,

    Defendant.

---

## ORDER

---

This matter is before the Court on Defendant's Motion for Judgment on the Pleadings Pursuant to Fed. R. Civ. P. 12(c) (the "Motion" or "Motion for Judgment on the Pleadings"). [Doc. 16]. The Court has reviewed the Motion and the related briefing, the applicable case law, and the entire docket. For the reasons below, the Motion for Judgment on the Pleadings is respectfully **DENIED**.

## BACKGROUND

Plaintiff Joseph Bowen ("Plaintiff" or "Mr. Bowen") began working for the Denver Sheriff's Department ("Defendant" or the "Sheriff's Department") as a deputy sheriff in 2005 and was promoted to a sergeant position in 2015. [Doc. 1 at ¶¶ 15–16]. Plaintiff alleges that "[o]ver the past few years, policing agencies have tried to hire more women as officers and supervisors," and to that end, "police officers have established the 30x30 Initiative." [*Id.* at ¶¶ 19–20]. The 30x30 Initiative is a pledge that promises that, by the year 2030, women will make up 30% of all police recruits. [*Id.* at ¶ 21]. The Sheriff's Department has not formally taken the 30x30 pledge, but "has decided to have 30% of its

workforce female by 2030." [*Id.* at ¶ 23].  Plaintiff alleges that, as of April 5, 2024, women made up 30% of the Sheriff's Department's workforce.  [*Id.* at ¶ 24].

When promotion opportunities are available, the Sheriff's Department opens a "promotion cycle" that typically stays open for several years.  [*Id.* at ¶ 26].  For the 2019–2021 promotion cycle, the Sheriff's Department made changes to its promotion procedures.  [*Id.* at ¶ 31].  For example, prior to 2019, the Sheriff's Department would rank all candidates based on their assessment scores and promote the highest-scoring employee, "work[ing] its way down the list" for other opportunities.  [*Id.* at ¶¶ 32–33]. For the 2019–2021 cycle, the Sheriff's Department sorted candidates into three "bands" based on their assessment scores:  a "high band," and "mid band," and a "low band."  [*Id.* at ¶ 35].  All candidates whose scores landed them in the high band were eligible for promotion, regardless of where their scores fell within the band.  [*Id.* at ¶ 36].

In 2019, Mr. Bowen applied to be promoted to Captain.  [*Id.* at ¶ 39].  After four assessments, he scored a total of 320.25, which was the third highest score and which placed him in the high band.  [*Id.* at ¶¶ 42–43, 45].

During the 2019–2021 promotion cycle, the Sheriff's Department promoted three employees to Captain, all of whom were women.  [*Id.* at ¶¶ 46–47].  Two white men "were declined for promotion," including Kyle Kilman ("Mr. Kilman"), who had the fourth highest score in the high band.  [*Id.* at ¶¶ 48, 51].  One of the promoted women scored higher than Mr. Bowen on the assessments, but the other two received lower scores.  [*Id.* at ¶ 49].  One of the women had a score of 305, which was "one of the lower scores of those placed in the high band."  [*Id.* at ¶ 50].

The promotion cycle ended in August 2021.  [*Id.* at ¶ 46].  Thereafter, Mr. Bowen

2

learned that two of the women promoted to Captain had received lower scores than he and Mr. Kilman.  [*Id.* at ¶ 53].  When he asked about his lack of promotion, Mr. Bowen was told that he was not promoted because (1) "people found him overly rigid, nit-picky, petty, and unfair to his subordinates and those above him," and (2) he was ineligible for a promotion due to a pending Administrative Investigations Unit ("AIU") case.  [*Id.* at ¶ 54].  He alleges, however, that his performance reviews "rated him highly on his interactions with staff and his supervisors" and he was never informed of or disciplined for these issues.  [*Id.* at ¶¶ 55–57].  He also alleges that the AIU investigation "could not be the reason why" he was not promoted in 2019, 2020, or 2021 because the investigation only opened in "the middle of 2021."  [*Id.* at ¶¶ 58–59].  In addition, Plaintiff alleges that the Sheriff's Department policies preclude using an active AIU investigation against a candidate.  [*Id.* at ¶ 61].

Mr. Bowen initiated this civil action on April 5, 2024.  *See generally* [*id.*].  He asserts one claim of sex discrimination under Title VII of the Civil Rights Act of 1964.  [*Id.* at ¶¶ 66–83].  On November 15, 2024, Defendant filed the instant Motion, seeking judgment in its favor under Rule 12(c).  [Doc. 16].  Defendant contends that, even taking all of the allegations in Plaintiff's Complaint as true, Plaintiff cannot establish a prima facie case of sex discrimination under Title VII.  [*Id.*].  Plaintiff has responded in opposition, see [Doc. 20], and Defendant has replied, [Doc. 21].

## LEGAL STANDARD

A motion for judgment on the pleadings under Rule 12(c) is reviewed under the standards applicable to motions to dismiss under Rule 12(b)(6).  *Corder v. Lewis Palmer Sch. Dist. No. 38*, 566 F.3d 1219, 1223 (10th Cir. 2009).  This requires the Court to

3

"assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) (quotation omitted). In conducting its review, the Court must "accept as true all well-pleaded factual allegations in a complaint and view the[] allegations in the light most favorable to the plaintiff," *id.*, to determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (cleaned up).

## ANALYSIS

Under Title VII, it is unlawful for an employer "to fail or refuse to hire . . . any individual, . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Typically, to establish a prima facie case of discrimination based on a failure to promote, a plaintiff must show that (1) the plaintiff belongs to a protected class; (2) the plaintiff applied for an available position for which he was qualified; (3) the plaintiff "was rejected under circumstances which give rise to an inference of unlawful discrimination." *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1216 (10th Cir. 2013) (quoting *Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981)). However, in cases where the plaintiff is a member of a historically favored group, the Tenth Circuit has instructed that "heightened standards are necessary for a prima facie showing to preserve the

4

integrity of [Title VII] and Congress's intent in enacting it." *Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1144 (10th Cir. 2008). In these "reverse discrimination" cases, "the prima facie case must be adjusted to account for the plaintiff's historically favored status." *Dickerson v. Bd. of Trustees of Metro. State Univ. of Denver*, No. 19-cv-02087-WJM-SKC, 2021 WL 492483, at *6 (D. Colo. Feb. 10, 2021).

Specifically, when the plaintiff "is a member of a historically favored group, . . . an inference of invidious intent is warranted only when 'background circumstances support the suspicion that the defendant is that unusual employer who discriminates against the majority.'" *Adamson*, 514 F.3d at 1149 (quoting *Notari v. Denver Water Dep't*, 971 F.2d 585, 588–89 (10th Cir. 1992)). In this type of case, "in lieu of showing that he belongs to a protected group," the plaintiff must establish "background circumstances" supporting an inference that the defendant discriminates against the majority. *Notari*, 971 F.2d at 589. "Alternatively, a plaintiff alleging reverse discrimination may establish his prima facie case by presenting direct evidence of discrimination or 'indirect evidence sufficient to support a reasonable probability that but for the plaintiff's status' he would not have suffered the adverse employment action." *Dickerson*, 2021 WL 492483, at *6 (quoting *Notari*, 971 F.2d at 590 (brackets omitted)).[1] For purposes of Rule 12(b)(6), the plaintiff need not "establish a prima facie case [of discrimination] in [his] complaint, [but] the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible

---

[1] Both Parties rely on the *Notari* standards in making their arguments, *see* [Doc. 16 at 7–8; Doc. 20 at 3–4], and the Tenth Circuit has continued to use this standard in recent years, *see Ibrahim v. All. for Sustainable Energy, LLC*, 994 F.3d 1193, 1201 (10th Cir. 2021); *Rutila v. Buttigieg*, No. 23-6157, 2024 WL 5153942, at *2 (10th Cir. Dec. 18, 2024). *But see Ames v. Ohio Dep't of Youth Servs.*, 145 S. Ct. 118 (2024) (granting certiorari to address the background circumstances requirement).

5

claim." *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012).

Defendant contends that Plaintiff fails to allege sufficient "background circumstances" to support an inference that the Sheriff's Department discriminates against men. [Doc. 16 at 8]. It also argues that Plaintiff fails to allege facts establishing a reasonable probability that but for his sex, he would have been promoted. [*Id.* at 9–10]. Mr. Bowen disagrees. He maintains that he has alleged background circumstances establishing a prima facie discrimination case, pointing the Court to three categories of allegations: (1) allegations that he was more qualified for the Captain position than the women who were promoted; (2) allegations that the Sheriff's Department changed its promotion process and "allowed the Department to discriminate against men"; and (3) allegations about "the Department's commitment to the 30x30 Initiative." [Doc. 20 at 5]. In the alternative, he argues that he otherwise alleges facts plausibly suggesting that he would have been promoted but for his sex, highlighting his allegations suggesting that Defendant's explanations for the non-promotion were pretextual. [*Id.* at 9–10].

I.  **Background Circumstances**

This Court has previously recognized that "[t]here is limited case law authority establishing the type of factual averments that are sufficient, at the pleading stage, to allege 'background circumstances' suggesting that an employer is the unusual type that discriminates against the majority." *Sparks v. Univ. of Colo.*, No. 21-cv-02016-RM-NYW, 2022 WL 1092141, at *6 (D. Colo. Apr. 12, 2022), *report and recommendation adopted*, 2022 WL 1423266 (D. Colo. May 5, 2022). This is likely because "determinations as to whether a plaintiff can establish a prima facie case of discrimination are typically made at the summary-judgment stage, as a complaint need not establish a prima facie case to

6

survive a Rule 12(b)(6) motion." *Id.* (citing *Khalik*, 671 F.3d at 1192). Nevertheless, the prima facie elements "help to determine whether Plaintiff has set forth a plausible claim," *Khalik*, 671 F.3d at 1192, so "some additional factual background making plausible that [Defendant] is an employer that discriminates against the traditional majority [sex] is required here," *Hunt v. Cent. Consol. Sch. Dist.*, 951 F. Supp. 2d 1136, 1209 (D.N.M. 2013).

By way of example, some courts have held that allegations about the employer's "workforce composition" were sufficient to sufficiently allege the requisite background circumstances. *See Perez v. Unified Gov't of Wyandotte Cnty.*, No. 10-cv-02107-JAR-GLR, 2011 WL 2038689, at *6 (D. Kan. May 25, 2011) (allegations that only five of the employer's twenty-six employees were men and that only women held leadership roles were sufficient to allege requisite background circumstances); *Reynolds v. Sch. Dist. No. 1*, 69 F.3d 1523, 1535 (10th Cir. 1995) (allegation that the plaintiff, who was denied a promotion, was the only white employee in her department was sufficient "in th[at] case" to allege background circumstances); *Sparks*, 2022 WL 1092141, at *7 (this Court concluding that a pro se plaintiff's allegations that employer employed eight women and one man were sufficient at the pleading stage to survive dismissal). Plaintiff's Complaint does not contain allegations like these; in fact, he alleges that only 30% of the Sheriff's Department's workforce is comprised of women. [Doc. 1 at ¶ 23].

On the other hand, courts have found allegations that the plaintiff was not given opportunities afforded to coworkers outside of the plaintiff's class were insufficient to plausibly allege background circumstances. *See, e.g., Rogers v. Nat'l Oilwell Varco Tuboscope*, No. 14-cv-01599-JLK, 2014 WL 4084243, at *3 (D. Colo. Aug. 19, 2014)

7

(allegations that Hispanic employees with less tenure were given advancement opportunities and the white plaintiff was not "[fell] short of creating background circumstances sufficient to create an inference of reverse discrimination" (quotation omitted)); *Rutila v. Buttigieg*, No. 5:22-cv-00948-DLR, 2023 WL 7037384, at *4 (W.D. Okla. May 30, 2023) (allegations that male plaintiff was denied reinstatement, but four women and two men were reinstated, including one woman who was "less qualified" than the plaintiff, were "hardly the sort of overwhelming disparity in workforce composition that might plausibly show background circumstances supporting an inference that the defendant discriminates against the majority"), *aff'd*, No. 23-6157, 2024 WL 5153942, at *1 (10th Cir. Dec. 18, 2024). Indeed, the Tenth Circuit has expressly stated that under this alternative framework, "it is not enough . . . for a plaintiff merely to allege that he was qualified and that someone with different characteristics was the beneficiary of the challenged employment decision." *Notari*, 971 F.2d at 590.

Against this backdrop, the Court considers Plaintiff's allegations. First, Plaintiff argues that his allegations about "the Department's commitment to the 30x30 Initiative" are sufficient to plausibly allege background circumstances. [Doc. 20 at 2]. He contends that the "Department's commitment to the Initiative establishes a practice or policy of favoring individuals belonging to groups regarded as disadvantaged" and that "the Department was actively trying to . . . promote more women when it decided not to promote Bowen." [*Id.* at 7]. However, the allegations in the Complaint do not match this assertion. Mr. Bowen alleges that the Sheriff's Department has not taken the 30x30 pledge, but nevertheless has "decided to have 30% of its workforce female by 2030." [Doc. 1 at ¶ 23]. But he also alleges that the 30x30 Initiative's goal is to "*hire* more women

8

as officers and supervisors" so that 30% of the Sheriff's Department's workforce is female. [*Id.* at ¶ 19 (emphasis added)]. There are no allegations that the 30x30 Initiative *also* aims to promote more women from within, or that the Sheriff's Department was actively trying to promote more women. *See generally* [*id.*]. The Court's analysis is limited to the allegations in the Complaint, and the Court cannot credit Plaintiff's reframing of those allegations in his response brief. *See Abdulina v. Eberl's Temp. Servs., Inc.*, 79 F. Supp. 3d 1201, 1206 (D. Colo. 2015).

Mr. Bowen also highlights his allegations that the Sheriff's Department changed its promotion process for the 2019–2021 cycle. [Doc. 20 at 2]. He argues that this change "allows the Department to select less qualified minority candidates over more majority-qualified candidates based on factors other than their performance on assessments," which, in his view, "establishes the possibility of a discriminatory motive." [*Id.* at 7]. Mr. Bowen acknowledges, however, that he could locate no case law that establishes that these allegations are sufficient to allege background circumstances. [*Id.* at 6].

Again, there are no well-pleaded factual allegations to support Mr. Bowen's assertion. While he contends in his Response that the old system was a "purely merit-based" process "where sex could not be considered," [*id.* at 7], there are *no* allegations in the Complaint that sex was a factor that could be considered during promotions under the new system, *see generally* [Doc. 1]. Rather, he alleges that candidates were sorted into three categories based on their assessment scores and that those within the group of top scorers were all eligible for promotion. [*Id.* at ¶¶ 35–36]. Nor does Plaintiff allege that the promotion process was changed for the specific purpose of promoting women or for the purpose of facilitating the consideration of sex in promotion decisions. There are

9

no plausible allegations demonstrating that this new process was not neutral or that sex was a consideration in the promotion decision. *See generally* [*id.*]. Accordingly, these allegations do not establish the requisite background circumstances. *See Rutila*, 2023 WL 7037384, at *3 (though the employer's change in grading methodology "worked to [the p]laintiff's disadvantage," there was "no indication that this had anything to do with his sex," and there were no allegations that the new grading scheme was applied in an uneven manner).

Finally, Plaintiff relies on allegations that all three of the candidates promoted during the 2019–2021 cycle were women, and two of these women scored lower than Plaintiff on the assessments. [Doc. 20 at 2]. He argues that he was more qualified than the two women who were promoted and that this, coupled with his non-promotion, is sufficient to allege the requisite background circumstances. [*Id.* at 5–6].

Again, the Court respectfully disagrees. Simply alleging that female candidates with lower scores were promoted over male candidates with higher scores is insufficient to plausibly allege that the Sheriff's Department discriminates against men. Plaintiff alleges that the Sheriff's Department changed its promotion system to no longer automatically promote the candidate with the highest assessment score, but to instead make all candidates within the high band eligible for promotion. [Doc. 1 at ¶¶ 35–36]. Thus, based on the allegations in the Complaint, an assessment score is not the only marker of a candidate's qualifications. But there are no allegations in the Complaint about what factors *are* considered in deciding which high-band candidate to promote. *See generally* [*id.*]. Accordingly, these allegations are not sufficient to establish background circumstances under current Tenth Circuit authority. *Rutila*, 2023 WL 7037384, at *4;

10

*Notari*, 971 F.2d at 590.

The failure to allege background circumstances, however, does not by itself necessitate judgment in Defendant's favor at this juncture. First, as noted above, the appropriate standard for reverse discrimination cases has been argued and is currently pending before the Supreme Court. *See supra* note 1. In addition, as discussed above, there are two alternative ways to plausibly allege a reverse discrimination case. *Notari*, 971 F.2d at 590. Accordingly, the Court must next consider whether Plaintiff has alleged sufficient facts to "support a reasonable probability[] that but for the plaintiff's status[,] the challenged employment decision would have favored the plaintiff." *Id.*

## II.   Reasonable Probability That Discrimination Occurred

Mr. Bowen asserts that he sufficiently alleges facts that support an inference that, but for his sex, he would have been promoted. [Doc. 20 at 8]. Among other arguments, Mr. Bowen contends that he has adequately alleged that the Sheriff's Department's justifications for not promoting him were pretextual, and "[a]n inference of discriminatory motive is permitted . . . when the reasons provided by the employer are proven to be unworthy of belief." [*Id.* at 9 (citing *Townsend v. Lumbermens Mut. Cas. Co.*, 294 F.3d 1232, 1241 (10th Cir. 2002))]. He argues that because he has alleged that the reasons given for his non-promotion could not be true, his allegations "permit an inference that it was something other than his interactions with the staff, like his sex, that caused him not to be promoted." [*Id.* at 10].[2] In its Reply, the Sheriff's Department argues only that

---

[2] Mr. Bowen again attempts to assert new factual allegations in his Response, this time concerning his employment evaluations. *See* [Doc. 20 at 10]. The Court does not consider these new allegations, which are not properly before the Court. *Abdulina*, 79 F. Supp. 3d at 1206.

11

pretext does not "compel[] a finding of discriminatory intent." [Doc. 21 at 8 n.5 (quotation omitted)]. It does not explain why Plaintiff's pretext allegations are insufficient, at the pleading stage, to state a plausible claim for relief. See [*id.*].

"[A] trier of fact may infer discriminatory intent from facts that also support a finding of pretext." *Adamson*, 514 F.3d at 1144. However, as Defendant points out, "evidence of 'pretext,' i.e. that an employer's stated reasons for an employment decision are inaccurate or untrue," does not "compel[]" that inference. *Id.* Indeed, courts must take care to "not conflate [allegations] tending to cast doubt on the employer's stated reasons for an employment decision with the plaintiff's prima facie burden of establishing an inference of [discrimination] in the first instance." *Nealis v. CoxCom, LLC*, 731 F. App'x 787, 791 n.2 (10th Cir. 2018). "[A]n employee hoping to prove his prima facie case by attacking the employer's reason for his termination must still show 'a demonstrable nexus between aspersions cast on an employer's stated reasons and invidious intent.'" *Crews v. City & Cnty. of Denver Sch. Dist. No. 1*, No. 13-cv-02912-MSK-MEH, 2016 WL 1274395, at *7 (D. Colo. Mar. 31, 2016) (quoting *Adamson*, 514 F.3d at 1144).

The Court finds that Plaintiff's allegations are sufficient to survive Defendant's Motion for Judgment on the Pleadings. "[S]o long as the plaintiff offers sufficient factual allegations such that the right to relief is raised above the speculative level, he has met the threshold pleading standard" to survive a Rule 12(c) motion. *United States ex rel. McIver v. ACT for Health, Inc.*, 536 F. Supp. 3d 839, 844 (D. Colo. 2021). Here, Plaintiff identifies his employer's stated bases for his non-promotion and provides specific examples as to why those rationales "could not be the reason" he was passed over for a promotion. [Doc. 1 at ¶¶ 54, 58–62]. These are classic pretext allegations, and while

allegations of pretext do not *compel* an inference of discrimination, they *may* support that inference.  *Adamson*, 514 F.3d at 1144.

A motion for judgment on the pleadings "only has utility when all material allegations of fact are admitted or not controverted in the pleadings and only questions of law remain to be decided by the district court."  5C Arthur R. Miller & A. Benjamin Spencer, *Federal Practice & Procedure* § 1367 (3d ed. June 2024 update).  The Parties' briefing demonstrates a likely factual dispute over the reasons why the Sheriff's Department declined to promote Plaintiff.  *See, e.g.*, [Doc. 21 at 8 n.5 (the Sheriff's Department "den[ying] any misrepresentation or dishonesty" with respect to the stated reasons for Plaintiff's non-promotion)].  While the Court cannot and does not pass on whether there are genuine disputes of fact in this case, or whether any such disputes are material, the pretext issue precludes the Court from entering judgment in Defendant's favor under Rule 12(c).  Accordingly, the Motion for Judgment on the Pleadings is respectfully **DENIED**.

The dispositive motion deadline in this case is currently set for May 9, 2025.  *See* [Doc. 23].  However, the Court notes that the Supreme Court's decision in *Ames v. Ohio Department of Youth Services* is forthcoming, and that decision could have an impact on the law governing this case.  In order to conserve the Parties' and the Court's resources, it is **ORDERED** that the Parties shall meet and confer with respect to whether an extension of the dispositive motions deadline is appropriate.  On or before **April 21, 2025**, the Parties shall file either a status report informing the Court that they do not seek an extension of the dispositive motions deadline or a motion for an extension of that deadline.

## CONCLUSION

For the reasons set forth above, **IT IS ORDERED** that:

(1) Defendant's Motion for Judgment on the Pleadings Pursuant to Fed. R. Civ. P. 12(c) [Doc. 16] is **DENIED**; and

(2) On or before **April 21, 2025**, the Parties shall file either a status report or motion for extension of time, as explained above.

DATED:  April 14, 2025

BY THE COURT:

_____
Nina Y. Wang
United States District Judge