**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang**

Civil Action No. 24-cv-00917-NYW-NRN

JOSEPH BOWEN,

     Plaintiff,

v.

CITY AND COUNTY OF DENVER, DENVER SHERIFF DEPARTMENT,

     Defendant.

---

### MEMORANDUM OPINION AND ORDER

---

This matter is before the Court on Defendant's Motion for Summary Judgment (or "Motion") filed on August 11, 2025.  [Doc. 29].  The Court has reviewed the Motion and concludes that oral argument would not materially assist in its resolution.  For the reasons set forth in this Order, the Motion for Summary Judgment is respectfully **DENIED**.

### BACKGROUND

Plaintiff Joseph Bowen ("Plaintiff" or "Mr. Bowen") was previously employed as a sergeant for the Denver Sheriff's Department ("Defendant" or "the Department").  [Doc. 1 at ¶ 7].  In 2019, he applied for a promotion to captain and was not selected.  [*Id.* at ¶¶ 25, 39].  During the 2019–2021 promotion cycle, three candidates were promoted to captain; all three successful candidates were women.  [*Id.* at ¶¶ 46–47].

Plaintiff claims that the Department declined to promote him because of his male sex.  [*Id.* at ¶¶ 25, 66–83].  He sued the Department in April 2024, asserting one claim of sex discrimination under Title VII of the Civil Rights Act of 1964.  [*Id.*].  Defendant now

moves for summary judgment in its favor on Plaintiff's claim. *See* [Doc. 29]. The Motion is fully briefed, *see* [Doc. 31; Doc. 34], and is ripe for resolution.

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if there is sufficient evidence so that a rational trier of fact could resolve the issue either way. A fact is material if under the substantive law it is essential to the proper disposition of the claim." *Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189, 1194 (10th Cir. 2011) (cleaned up). "There is no genuine issue of material fact unless the evidence, construed in the light most favorable to the non-moving party, is such that a reasonable jury could return a verdict for the non-moving party." *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

At summary judgment, a movant that does not bear the ultimate burden of persuasion at trial does not need to disprove the other party's claim; rather, the movant must only point the Court to a lack of evidence for the other party on an essential element of that party's claim. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). Once this movant has met its initial burden, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quotation omitted).

When considering the evidence in the record, the Court cannot and does not weigh the evidence or determine the credibility of witnesses. *Forth v. Laramie Cnty. Sch. Dist. No. 1*, 85 F.4th 1044, 1052 (10th Cir. 2023). At all times, the Court views the record in

the light most favorable to the nonmoving party. *Banner Bank v. First Am. Title Ins. Co.*, 916 F.3d 1323, 1326 (10th Cir. 2019).

## UNDISPUTED MATERIAL FACTS

The following undisputed material facts are drawn from the summary judgment record.

1.      Plaintiff began working for the Department in 2005 as a deputy sheriff. [Doc. 29 at ¶ 1; Doc. 31 at 2 ¶ 1; Doc. 1 at ¶ 15]. He was promoted to a sergeant position in 2015 by Sheriff Elias Diggins ("Sheriff Diggins"). [Doc. 29 at ¶ 2; Doc. 31 at 2 ¶ 2; Doc. 29-1 at 90:23–91:4].

2.      The Department utilizes two-year "cycles" for employment promotions. [Doc. 29 at ¶ 10; Doc. 31 at 5 ¶ 10; Doc. 29-4 at 7:18–21].

3.      For the 2019–2021 promotion cycle, candidates completed assessments and exercises and participated in an interview. [Doc. 29 at ¶ 20; Doc. 31 at 5 ¶ 20; Doc. 1 at ¶¶ 39–41]. Based on their final scores, the candidates were sorted into three "bands": a high band, a mid band, and a low band. [Doc. 29 at ¶ 13; Doc. 31 at 5 ¶ 13; Doc. 29-4 at 30:15–24]. The Department could promote any person in the high band, regardless of the candidate's final score. [Doc. 29 at ¶ 17; Doc. 31 at 5 ¶ 17; Doc. 29-4 at 32:1–12; Doc. 29-5 at 31:11–14].

4.      Plaintiff applied for a promotion to captain in 2019 and completed the assessment process. [Doc. 29 at ¶ 19; Doc. 31 at 5 ¶ 19; Doc. 1 at ¶ 39].

5.      Plaintiff's assessments resulted in a final score of 320.25, which placed him in the high band. [Doc. 29 at ¶ 21; Doc. 31 at 5 ¶ 21; Doc. 1 at ¶ 43]. He scored a 50 out

of 100 in the interview portion, which was "on the lower side."  [Doc. 29 at ¶ 22; Doc. 31 at 5 ¶ 22; Doc. 29-6 at 1].

6.   During the 2019–2021 promotion cycle, three candidates were promoted to captain.  [Doc. 29 at ¶ 28; Doc. 31 at 6 ¶ 28; Doc. 29-7 at 1].

7.   Janelle Orozco, who scored the highest of all the candidates, was promoted to captain in 2019.  [Doc. 29 at ¶¶ 30–31; Doc. 31 at 6 ¶¶ 30–31; Doc. 29-6 at 1; Doc. 29-7 at 1].[1]

8.   A male sergeant was selected for the next promotion to captaincy before he unexpectedly passed away.  [Doc. 29 at ¶ 33; Doc. 31 at 6 ¶ 33; Doc. 29-3 at 29].

9.   Keri Adcock, who had an assessment score of 310.42, was promoted to captain in September 2020.  [Doc. 29 at ¶¶ 35–36; Doc. 31 at 6 ¶¶ 35–36; Doc. 29-6 at 1; Doc. 29-7 at 1].

10.   Alberta Compton scored 305 on the assessment and was promoted to captain in November 2020.  [Doc. 29 at ¶¶ 39–40; Doc. 31 at 6 ¶¶ 39–40; Doc. 29-6 at 1; Doc. 29-7 at 1].

11.   Mr. Bowen believes that both Captain Adcock and Captain Compton were qualified for their promotions.  [Doc. 29 at ¶¶ 37, 42; Doc. 31 at 6 ¶¶ 37, 42; Doc. 29-5 at 37:10–38:16].

12.   In promoting employees, Sheriff Diggins looked for candidates who "[led] with humanity," had empathy, were respected, and had a good reputation among

---

[1] Interim Sheriff Fran Gomez made the decision to promote Captain Orozco, not Sheriff Diggins.  [Doc. 29 at ¶ 30 n.1; Doc. 31 at 6 ¶ 30; Doc. 29-3 at 5].

subordinates, peers, and superiors.  [Doc. 29 at ¶ 24; Doc. 31 at 5 ¶ 24; Doc. 29-1 at 46:2–16].

13.     The Department received feedback and/or complaints from the Fraternal Order of Police that Plaintiff's subordinates perceived him to have an "overly rigid and harsh management style."  [Doc. 29 at ¶ 3; Doc. 31 at 2 ¶ 3; Doc. 29-1 at 68:21–25, 70:14–19, 82:10–23, 83:13–24].[2]

14.     In 2021, an Administrative Investigations Unit ("AIU") investigation was opened into alleged discriminatory conduct committed by Plaintiff.  [Doc. 29 at ¶ 5; Doc. 31 at 3 ¶ 5; Doc. 29-1 at 69:15–21; Doc. 29-2 at 1–3].[3]

15.     After the AIU investigation, Plaintiff was found to have not violated any Department rules or policies, but it was recommended that Plaintiff receive training about supervision and interpersonal communications.  [Doc. 29 at ¶ 7; Doc. 31 at 4 ¶ 7; Doc. 29-2 at 3].

16.     Sheriff Diggins stated that one of the reasons he decided to not promote Plaintiff was his observations of Plaintiff and the type of leader Plaintiff was over his entire career.  [Doc. 29 at ¶ 44; Doc. 31 at 6 ¶ 44; Doc. 29-1 at 71:17–21, 72:22–23, 73:5–25].

---

[2] Mr. Bowen "denies [that] all officers under him had this perception" and questions the credibility of the reports of his management style. [Doc. 31 at 2 ¶ 3 (emphasis omitted)]. But Mr. Bowen does not deny that these reports were made or received.  [*Id.*]. Accordingly, the Court deems this fact undisputed.  *See* Fed. R. Civ. P. 56(e)(2) ("If a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion.").

[3] Mr. Bowen denies much of the Department's assertion of fact, but he does not deny that an AIU investigation was opened against him.  [Doc. 31 at ¶ 5].

## ANALYSIS

When a plaintiff asserting a discrimination claim relies on circumstantial evidence of discrimination (as opposed to direct evidence), courts employ the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Mauldin v. Driscoll*, 136 F.4th 984, 993 (10th Cir. 2025).[4]  Under this framework, the plaintiff has the initial burden of establishing a prima facia case of discrimination. *Id.*  This requires the plaintiff to show (1) he is a member of a protected class; (2) he experienced an adverse employment action; and (3) "the challenged action occurred under circumstances giving rise to an inference of discrimination." *McNellis v. Douglas Cnty. Sch. Dist.*, 116 F.4th 1122, 1139 (10th Cir. 2024) (quotation omitted).

If the plaintiff meets this burden, then the employer must "'articulate some legitimate, nondiscriminatory reason' for its action." *Mauldin*, 136 F.4th at 993 (quoting *McDonnell Douglas*, 411 U.S. at 802).  If it does so, then the burden moves back to the plaintiff to "show there is at least a genuine issue of material fact as to whether the

---

[4] Mr. Bowen asserts that the *McDonnell Douglas* framework "is not a substantive legal standard that a plaintiff must establish to survive summary judgment," [Doc. 31 at 12], and frequently cites a concurring opinion that critiques the use of the *McDonnell Douglas* framework at the summary-judgment stage, *see* [*id.* at 1, 12–14, 16 (citing *Jenny v. L3Harris Techs., Inc.*, 144 F.4th 1194, 1202 (10th Cir. 2025) (Eid, J., concurring))]; *see also Jenny*, 144 F.4th at 1202 (Eid, J., concurring) (stating that "*McDonnell Douglas* has faced mounting scrutiny over the years" and collecting cases).  To the extent Plaintiff suggests that this Court should disregard the *McDonnell Douglas* framework in its analysis, the Court cannot do so.  The Tenth Circuit continues to employ this framework in its summary-judgment analysis, *see, e.g., Mauldin*, 136 F.4th at 993; *Byrnes v. St. Catherine Hosp.*, 158 F.4th 1107, 1113–14 (10th Cir. 2025), and the Court remains bound by this authority absent a United States Supreme Court or en banc Tenth Circuit decision overruling this precedent, *Haynes v. Williams*, 88 F.3d 898, 900 n.4 (10th Cir. 1996); *see also Van Huss v. Bill's Elec., Inc.*, No. 24-cv-00213-SH, 2025 WL 2834742, at *11 (N.D. Okla. Oct. 6, 2025) ("This Court is bound by Tenth Circuit precedent, and that precedent teaches that the *McDonnell Douglas* framework is appropriately used at the summary judgment stage.").

employer's proffered legitimate reason is genuine or pretextual." *Jenny v. L3Harris Techs., Inc.*, 144 F.4th 1194, 1198 (10th Cir. 2025) (quotation omitted).

Generally speaking, "a plaintiff who has shown pretext under the *McDonnell Douglas* framework . . . need not do anything further to avoid summary judgment." *Id.* (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 146–48 (2000)). But in "rare" cases, where "no rational factfinder could conclude that the [adverse employment] action was discriminatory," summary judgment may be appropriate. *Id.* (first quoting *Jones v. Okla. City Pub. Schs.*, 617 F.3d 1273, 1282 (10th Cir. 2010); then quoting *Reeves*, 530 U.S. at 148). The Supreme Court has identified "only two" circumstances in which this exception could apply: "(1) if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision' or (2) if 'the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred.'" *Id.* at 1198–99 (quoting *Reeves*, 530 U.S. at 148).

## I.    Prima Facie Case of Discrimination

The Department argues that Mr. Bowen cannot establish a prima facie case of discrimination because he cannot show that the Department's decision to pass him over for a promotion "was based on him being male or under circumstances which give rise to an inference of unlawful discrimination." [Doc. 29 at 13]. Plaintiff responds that "[r]ejecting a more qualified candidate in favor of a minority applicant with lesser qualifications raises [an] inference of discrimination," relying on a case from the District of Columbia Circuit. [Doc. 31 at 21 (citing *Harding v. Gray*, 9 F.3d 150, 153 (D.C. Cir.

1993), *abrogated on other grounds by Ames v. Ohio Dep't of Youth Servs.*, 605 U.S. 303 (2025))].

The Court notes that, in the Tenth Circuit, the plaintiff's qualifications are usually discussed in the *pretext* analysis, as opposed to the initial prima facie analysis. *See, e.g.*, *Jaramillo v. Colo. Jud. Dep't*, 427 F.3d 1303, 1308–09 (10th Cir. 2005); *Johnson v. Weld Cnty.*, 594 F.3d 1202, 1211 (10th Cir. 2010); *Ford v. Jackson Nat'l Life Ins. Co.*, 45 F.4th 1202, 1219 (10th Cir. 2022). Moreover, the Court is respectfully unpersuaded by Plaintiff's reliance on *Harding* to suggest that the promotion of an allegedly less qualified person necessarily raises an inference of discrimination, as the District of Columbia Circuit more recently stated that "[i]n order to justify an inference of discrimination, the qualifications gap must be great enough to be inherently indicative of discrimination." *Holcomb v. Powell*, 433 F.3d 889, 897 (D.C. Cir. 2006). It is undisputed that Plaintiff, Captain Adcock, and Captain Compton were all categorized in the same "high band," making all three eligible for promotion to captain. [Doc. 29 at ¶¶ 17, 35, 40; Doc. 31 at 5–6 ¶¶ 17, 35, 40]. Plaintiff does not advance any arguments about the size of the gap between his qualifications and the women who were promoted over him, or legal authority to suggest that the use of the band system itself satisfies the inquiry at the prima facie stage. *See* [Doc. 31 at 12–13].

The Tenth Circuit has a "tradition of treating *McDonnell Douglas*'s prima-facie-case requirement as an entirely flexible standard," *Plump v. Gov't Emps. Ins. Co.*, 161 F.4th 1222, 1232 (10th Cir. 2025), and "the articulation of the plaintiff's prima facie test might vary somewhat depending on the context of the claim and the nature of the adverse employment action alleged," *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220,

1227 (10th Cir. 2000). Here, neither Party articulates what constitutes "circumstances giving rise to an inference of discrimination" in this context. Based on this Court's independent research, the Tenth Circuit has, at least twice, articulated the elements of a prima facie case in the failure-to-promote context as requiring the following elements: (1) there were promotional opportunities available; (2) the plaintiff was qualified for a promotion; (3) the plaintiff was not promoted; and (4) the promotional opportunities were filled by someone outside of the plaintiff's protected class. *See Nulf v. Int'l Paper Co.*, 656 F.2d 553, 558 (10th Cir. 1981); *Sprague v. Thorn Ams., Inc.*, 129 F.3d 1355, 1362 (10th Cir. 1997). These elements do not appear to be in dispute here. *See* [Doc. 29 at ¶¶ 17, 21, 30, 35, 39; Doc. 31 at 5–6 ¶¶ 17, 21, 30, 35, 39]. And because the prima facie burden is "not onerous," *Ames*, 605 U.S. at 309 (quotation omitted), the Court finds that Plaintiff has met his prima facie burden here.

## II. Legitimate Explanation for the Decision

The second step of the *McDonnell Douglas* test requires Defendant to "to articulate some legitimate, nondiscriminatory reason" for its decision to not promote Plaintiff. *McDonnell Douglas*, 411 U.S. at 802. This burden is "exceedingly light." *DePaula v. Easter Seals El Mirador*, 859 F.3d 957, 970 (10th Cir. 2017) (quotation omitted).

Defendant argues that the women who were promoted to captain were selected not only based on their assessment and interview scores, but also on "their leadership skills and competencies, reputation in the department, and previous performance." [Doc. 29 at 18]. It also argues that Plaintiff was *not* selected for a promotion because of Sheriff Diggins's observations of Plaintiff's leadership style and complaints about Plaintiff from others in the Department about his "overly rigid and harsh management style." [*Id.* at 18–

19; *id.* at ¶ 3]. Plaintiff does not dispute that Defendant has articulated a legitimate, non-discriminatory reason for its decision. *See* [Doc. 31]. The Court thus finds that Defendant has met its "exceedingly light" burden here. *DePaula*, 859 F.3d at 970; *cf. Turner v. Pub. Serv. Co. of Colo.*, 563 F.3d 1136, 1143 (10th Cir. 2009) (finding that plaintiff's low interview score was legitimate reason for defendant's hiring decision).

## III.     Pretext

Now, the burden shifts back to Plaintiff to "present evidence that shows a genuine issue of material fact as to whether [Defendant's] reason was pretextual." *Mauldin*, 136 F.4th at 996. To establish pretext, Plaintiff "must show that the [employer's] proffered reasons were so incoherent, weak, inconsistent, or contradictory that a rational factfinder could conclude the reasons were unworthy of belief." *Bekkem v. Wilkie*, 915 F.3d 1258, 1268 (10th Cir. 2019) (quotation omitted); *see also Jaramillo*, 427 F.3d at 1308 (pretext may be shown through evidence of "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action" (quotation omitted)). "Mere conjecture that the employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment." *Bekkem*, 915 F.3d at 1268 (quotation omitted). The Court looks at pretext evidence in its totality, as opposed to looking at each piece of evidence in isolation. *Id.* at 1270.

In his Response, Mr. Bowen lists a number of "[r]easons to doubt [the] veracity" of Defendant's explanation. [Doc. 31 at 13–20]. The Court discusses each piece of evidence before determining whether, when considered in its totality, Plaintiff's evidence is sufficient to create an inference of pretext. *See Ford*, 45 F.4th at 1217–21 (addressing each piece of evidence to determine whether it would permit an inference of pretext before

10

determining whether, based on that evidence, a reasonable jury could find that employer's reasons were pretextual); *Plump*, 161 F.4th at 1233–37 (same).

**The "Overlooking" of Information about Plaintiff.**    Plaintiff argues that "the Department overlooked information indicating that he did [sic] not align with its view of [Plaintiff]." [Doc. 31 at 13].  But his first example does not concern an alleged overlooking of information; it instead identifies what Plaintiff perceives as a weakness in the Department's explanation for its decision.   Specifically, with respect to the informal complaints allegedly made about Plaintiff, he asserts that "[t]here is reason to question whether the complaints occurred because Diggins never shared them with Bowen, or with any of Bowen's Captains" and because Sheriff Diggins "could not articulate the substance of any of the[] complaints, who made them, or when they occurred."  [*Id.* at 14].  This argument is unsupported by legal authority, [*id.* at 14–15], and Plaintiff fails to explain how Sheriff Diggins's inability to recall specifics about the exact number or date of complaints, and Plaintiff's resulting speculation about whether the complaints actually occurred, creates a genuine dispute about pretext.  "Mere conjecture that the employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment."  *Bekkem*, 915 F.3d at 1268.  The Court cannot conclude that Sheriff Diggins's inability to recall the specifics of the informal complaints—years after they were made—creates a reasonable inference that the Department's reliance on those complaints is a pretextual excuse. *Cf. Brown v. Colo. Jud. Dep't*, No. 22-1065, 2023 WL 4743055, at *6 (10th Cir. July 25, 2023) (inconsistencies that "involved evidentiary conflicts rather than inconsistent explanations for the hiring decision itself" did not establish pretext).

Plaintiff also argues that Sheriff Diggins "overlooked information about Bowen that did not fit [Sheriff Diggins's] view of Bowen." [Doc. 31 at 13 (emphasis omitted)]. Specifically, he argues that Sheriff Diggins "did not look at Bowen's performance reviews," and that if he had, he would have seen that "people who worked with Bowen every day did not find him overly harsh, but rather direct and polite." [*Id.* at 14–15]. But notably, Sheriff Diggins stated that he did not look at the performance reviews of *any* candidate. *See* [Doc. 31-1 at 50:8–10].[5] At best, this evidence might call the thoroughness of Sheriff Diggins's selections into question. But "[e]vidence . . . that the employer was mistaken or used poor business judgment—is not sufficient to show that the employer's explanation is unworthy of credibility." *Plump*, 161 F.4th at 1233. The relevant question is not "whether the employer's reasons were wise, fair or correct," but "whether the employer honestly believed its reasons and acted in good faith upon them." *Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1118–19 (10th Cir. 2007). Evidence that Sheriff Diggins did not look at any employee's performance reviews does not create an inference that his stated bases for his decision—his observations of Plaintiff and reports of Plaintiff's harsh leadership style—were pretextual.

**Qualifications.** Next, Mr. Bowen highlights that he had a higher assessment score than two candidates promoted to captain. [Doc. 31 at 15]. A plaintiff can establish

---

[5] Similarly, Plaintiff's evidence that he was "commended . . . for being different" and was "describ[ed] in glowing terms" in his performance reviews, [Doc. 31 at 15], does not support a finding of pretext. This evidence does not constitute an inconsistency, weakness, or implausibility in the Department's assertion that Sheriff Diggins relied on informal complaints about Plaintiff in deciding not to promote him because it does not call into question the veracity of the Defendant's statement. *See Ford*, 45 F.4th at 1216 ("[E]ven if others may have 'praised' Ford's product knowledge, it does not follow that May's reason for hiring another candidate—because he had 'better product knowledge'— was pretextual.").

pretext by showing that the plaintiff was more qualified than applicants who were hired for a position. *Jaramillo*, 427 F.3d at 1308–09. But courts "must proceed with caution when considering the relative merits of individual employees" and cannot "act as a super personnel department that second guesses employers' business judgments." *Id.* at 1308 (quotation omitted). "[M]inor differences between a plaintiff's qualifications and those of a successful applicant are not sufficient to show pretext." *Id.* at 1308–09. Rather, "[t]o show pretext, the disparity in qualifications must be overwhelming." *Id.* at 1309 (quotation omitted). And "an employee's own belief that [he] was the most qualified candidate for a position is not enough to show pretext." *Ford*, 45 F.4th at 1219.

Mr. Bowen's qualifications argument relies solely on the fact that his "assessment scores were objectively higher than those of two of the women promoted to Captain." [Doc. 31 at 15]. He argues that the Court cannot consider the degree to which his scores were higher than the other candidates' scores because this would require the Court to weigh evidence, which it cannot do. [*Id.* at 16]. The Court disagrees. This Court is bound by Tenth Circuit authority instructing that a difference in qualifications only establishes pretext if the difference is "overwhelming," which necessarily requires consideration of qualification disparities between candidates. *Jaramillo*, 427 F.3d at 1308–09; *Johnson*, 594 F.3d at 1211–12 (assessing differences in qualifications between plaintiff and comparator employee). Moreover, by relying only on his assessment score, without any supporting argument explaining why his higher score *alone* shows that he was more qualified for a promotion, Plaintiff has not shown that he was "overwhelmingly" more qualified than either of the two women promoted in 2020. *See Santana v. City & Cnty. of Denver*, 488 F.3d 860, 865 (10th Cir. 2007) (concluding that the plaintiff's higher

assessment score "alone [did] not demonstrate pretext" where both candidates "received assessment scores high enough to be placed in a pool of candidates qualified for a promotion to captain" and "[o]nce applicants reached the interview process, the panelists were free to select any of the candidates in the group without regard to score"); *cf. Conroy v. Vilsack*, 707 F.3d 1163, 1174 (10th Cir. 2013) ("Even granting Ms. Conroy's contention [that she had superior technical skills to the comparator], she still fails to demonstrate that she was overwhelmingly more qualified than [the comparator employee] *on the whole*, taking into account all of the factors that the agency found relevant."). Plaintiff's assessment score alone does not establish an inference of pretext.

*Subjective Criteria.* Next, Plaintiff argues that he can establish pretext by pointing out the "subjective" nature of the promotion decisions. [Doc. 31 at 16]. He contends that Sheriff Diggins "did not follow any established standards but instead used his own discretion," acted alone in the promotional decisions, and "depended on others' perceptions, which could be subjective," and he suggests that these circumstances establish pretext. [*Id.* at 17].

"[A] plaintiff cannot prove that he was discriminated against simply because an employment decision was based on subjective criteria." *Cortez v. Wal-Mart Stores, Inc.*, 460 F.3d 1268, 1275 (10th Cir. 2006). "Indeed, *some* subjectivity is to be expected in every hiring decision." *Conroy*, 707 F.3d at 1177. "Title VII does not do away with traditional management rights. An employer has discretion to choose among equally qualified candidates, provided that the decision is not based upon unlawful criteria." *Id.* at 1177–78 (quotation omitted).

To be sure, the use of subjective criteria *can* be evidence of pretext. *See Ford*, 45 F.4th at 1218. But courts "'typically' will infer pretext from the employers' use of subjective evaluation criteria in the hiring process '*only when* the criteria on which the employers ultimately rely are *entirely* subjective in nature.'" *Conroy*, 707 F.3d at 1178 (quoting *Jones*, 349 F.3d at 1267–68) (first emphasis added). This is not the case here, where it is undisputed that objective assessments placed candidates in a high, mid, or low band, and only candidates from the high band were eligible for promotion. [Doc. 29 at ¶¶ 13, 17; Doc. 31 at 5 ¶¶ 13, 17]. Accordingly, this evidence does not permit an inference of pretext. *See Ford*, 45 F.4th at 1219 (the use of subjective hiring criteria "[did] not allow" an inference of pretext where the defendant used "*some* objective measurements" in its hiring decision, such that it was not "wholly subjective"); *Conroy*, 707 F.3d at 1178 (finding that plaintiff failed to show pretext based on the use of subjective criteria where the candidates' qualifications were assessed based on five areas of knowledge, skills, and abilities, and those criteria were made known to candidates).

**Gender Stereotypes.** Plaintiff also points out that one of the criteria Sheriff Diggins used in assessing candidates was whether a candidate had empathy. [Doc. 31 at 17]; *see also* [Doc. 29-1 at 46:6–11; Doc. 29-3 at 7]. He observes that Sheriff Diggins "admitted [in his deposition] that one [gender stereotype] could be that men lack empathy," and he argues that "[i]f Diggins believed men lacked empathy, or women inherently possessed more, and used that belief in his employment decisions, the Department discriminated against Bowen based on his sex." [Doc. 31 at 17].

This evidence does not create an inference of pretext. There is *no* evidence that Sheriff Diggins holds the belief that men lack empathy. As Plaintiff himself acknowledges,

see [*id.*], Sheriff Diggins stated that he disagreed "that the stereotypical man would be considered to lack empathy," *see* [Doc. 29-1 at 47:14–18], and Plaintiff offers no conflicting evidence.  Nor is there any evidence that Sheriff Diggins relied on this stereotype in deciding who to promote.  Relying on the supposition that some unidentified, *and hypothetical*, individuals *might* believe that men lack empathy to find an inference of pretext in this case would require an enormous inferential leap.  This does not demonstrate pretext.

**Subsequent Promotion of Men.**  Mr. Bowen asserts that, in 2022, the Department promoted five men and one woman to captain.  [Doc. 31 at 19].  He argues that "[a] juror could . . . decide [the Department's 2022 promotion slate] is evidence of the Department discriminating against men in the 2019–2021 promotion cycle and compensating for that discrimination by promoting men afterwards."  [*Id.* at 19–20].  Plaintiff fails to articulate how the Department's 2022 promotion decisions demonstrate pretext.  Because his argument fails to make any connection between the Department's 2022 promotion decisions and the Department's stated reasons for not promoting Plaintiff during the 2019–2021 promotion cycle, this evidence does not create an inference pretext.  *See Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 1001 (10th Cir. 2011) (rejecting pretext argument that made "no apparent connection between [the plaintiff's] evidence and the alleged falsity of [the employer's] reason for terminating [the plaintiff]").

**Flexible Process.**  Plaintiff also takes issue with the Department's position at summary judgment that its promotion procedures prior to the 2019–2021 cycle lacked flexibility and prevented the Department from considering anything other than assessment scores, *see* [Doc. 29 at ¶¶ 14–15], arguing that "[t]he Department did not

need to change its process to consider factors such as past employee performance in determining who to promote" because, in 2014, the Department passed over a high-scoring candidate who lacked leadership skills, *see* [Doc. 31 at 20].  Again, this argument fails to articulate any inconsistencies, weaknesses, or implausibilities in the Department's stated reasons for declining to promote Plaintiff, so as to establish pretext.  *Twigg*, 659 F.3d at 1001.

**Observations of Mr. Bowen and the AIU Investigation.**  Although the majority of the pretext grounds raised by Mr. Bowen do not help create an inference of pretext, two of his arguments may—drawing all reasonable inferences in Plaintiff's favor—be sufficient to create a question for the jury as to pretext.

First, with respect to the Department's assertion that Sheriff Diggins relied on his own personal observations of Mr. Bowen's management style in deciding to not promote him, [Doc. 29 at ¶ 44], Mr. Bowen asserts that "[t]here is a question of fact as to whether Diggins actually observed Bowen manage employees," [Doc. 31 at 18 (emphasis omitted)].  In his deposition, Sheriff Diggins stated that he considered the following factors in making his promotion decisions:

> [The candidates'] reputation amongst staff, amongst their peers, and other leaders above them.  Their performance.  Their engagement with staff, with the community.  There are a number of different characteristics. . . .  Their involvement in the department.  My direct observation of them when walking around.  The achievements that they've had in the agency, such as being a field training officer, being on the emergency response unit, working in different areas, going above and beyond the call of duty, just to name a few.

[Doc. 29-1 at 26:23–27:14].  With respect to Mr. Bowen specifically, when Sheriff Diggins was asked to "give . . . examples of when [he] observed Mr. Bowen not leading with

humanity," he stated that he "would see [Mr. Bowen] speak to people and working in pods in a way that was just rigid."  [*Id.* at 114:20–23].

Mr. Bowen "denies [that] Diggins had the chance to see his management style." [Doc. 31 at 3 ¶ 4 (emphasis omitted)].  He asserts that he "cannot recall any time Diggins observed him managing employees."  [*Id.* at 18]; *see also* [Doc. 31-3 at ¶¶ 13–16].  He also asserts that Sheriff Diggins's "own testimony raises questions about his ability to observe Bowen manage employees" because Sheriff Diggins stated that he only observed Mr. Bowen "at most, once every couple weeks, at least once a month."  [Doc. 29-1 at 72:7–12; Doc. 31 at 18].

As to Mr. Bowen's suggestion that Sheriff Diggins did not have *enough time* to meaningfully observe Mr. Bowen during his workday, this alone does not support an inference of pretext.  Rather, it would only suggest that Sheriff Diggins made his decisions without sufficient information about all of the candidates.  But the relevant question is not whether Sheriff Diggins's stated reasons "were wise, fair or correct."  *Riggs*, 497 F.3d at 1118.   The Court cannot "sit as a superpersonnel department that second-guesses the [employer's] business decisions, with the benefit of twenty-twenty hindsight."  *Frappied v. Affinity Gaming Black Hawk, LLC*, 966 F.3d 1038, 1059 (10th Cir. 2020) (quotation omitted).

However, Plaintiff has also submitted evidence that might call into question Sheriff Diggins's statement that he directly observed Mr. Bowen's harsh and rigid management style himself.  *Compare, e.g.*, [Doc. 29-1 at 114:18–23 ("When I observed him, I saw it myself. . . .  I would see him speak to people and working in pods in a way that was just rigid.")], *with* [Doc. 31-3 at ¶¶ 14–15 ("Diggins never stopped to observe me in doing my

18

duties. . . .   Diggins never stopped to observe me performing my duties, and he never had the opportunity to personally observe me in any kind of a confrontation with any staff or inmate.")].   The Court cannot resolve this factual dispute on summary judgment.   And if the jury believes Mr. Bowen that Sheriff Diggins never personally observed his management style, and *disbelieves* Sheriff Diggins when he says that he did, then the jury could find that one of Defendant's stated bases for its decision is "unworthy of credence and therefore pretextual."  *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1219 (10th Cir. 2013).

Plaintiff also argues that "[t]here is a question of fact regarding the Department's reliance on the AIU Investigation" in making its promotion decisions.   [Doc. 31 at 19 (emphasis omitted)].   He notes that although the Department *now* states that the AIU investigation was not one of the reasons for Plaintiff's non-promotion, *see* [Doc. 29 at ¶ 6], he asserts that "[t]his differs from what the Department stated to the EEOC," [Doc. 31 at 19].[6]  Specifically, in its EEOC position statement,[7] the Department provided a chart

---

[6] Mr. Bowen also asserts that Defendant's current position "differs from what the Department stated" in Defendant's responses to Plaintiff's interrogatories.   [Doc. 31 at 19].   This argument misconstrues Defendant's interrogatory response.   When asked to "[l]ist the reasons why the Department did not promote Bowen to Captain," the Department responded in part:   "The Department determined that Bowen was not ready to serve as a Captain based on complaints received from staff members about their interactions with him and Sheriff Diggins' personal observations of Bowen when he performed his work on a day-to-day basis.   *Notably, complaints from staff members culminated in an AIU investigation in late 2021*, case number 2021-0069.   Although the investigation did not result in a sustained rule violation, the Conduct Review Unit . . . recommended that Bowen receive remedial training regarding supervision and interpersonal communications."   [Doc. 29-3 at 6 (emphasis added)].   The Department did not state that it relied on the AIU investigation in its promotion decisions; it stated that it relied on staff complaints before noting that employee complaints ultimately *led to* an AIU investigation in late 2021.

[7] An individual alleging employment discrimination must file a charge with the EEOC before filing a formal lawsuit under Title VII.   *Payan v. UPS*, 905 F.3d 1162, 1169 n.1

with the name and demographic information of all seven individuals who scored in the high band during the 2019–2021 promotion cycle.  [Doc. 31-6 at 4].  In a column titled "Promoted/Reason," the chart states, with respect to Mr. Bowen:  "Declined to promote – numerous subordinate complaints and other concerning behaviors, open AIU investigation."  [*Id.*].  Then, in its narrative explanation, the Department stated:

> [Mr. Bowen] also has numerous complaints against him.  While many were not the type that involved misconduct or a violation of policy, there were many about his overly rigid and harsh management style.  Currently, the Sheriff Department is significantly understaffed, and was at the time [Mr. Bowen] declined for promotion.  Morale is already low due to long hours and mandatory overtime.  Promoting a supervisor into a higher-level position when he is already viewed as "out to get them" by deputies, was determined to be not in the best interest of the Department.  [Sheriff Diggins] has long advocated the core value of the Department "lead with humanity." It was the Sheriff's experience with [Mr. Bowen] that he does not lead with humanity, and instead is unduly harsh on everyone who does not outrank him.  While the Sheriff does not believe that [Mr. Bowen] can never be promoted, he feels [Mr. Bowen] is not ready to be promoted at this time.

[*Id.*].

Plaintiff argues that the AIU investigation could not have been a reason for the non-promotion because the AIU investigation "was not assigned to an investigator until May 3, 2021," and the last person promoted during the 2019–2021 cycle was promoted on November 20, 2020, "making it difficult to believe the AIU investigation played any role in the decision to not promote Bowen."  [Doc. 31 at 19 (emphasis omitted)].  Defendant agrees with this timing argument, stating that "[t]he AIU investigation itself was not a basis for the decision to not promote Plaintiff to Captain, as the complaint that promoted the investigation occurred after the Captain selection."  [Doc. 29 at ¶ 6].  However, Defendant

---

(10th Cir. 2018); 42 U.S.C. § 2000e-5(e)(1).  On March 11, 2022, the Department filed a position statement responding to Mr. Bowen's charge.  *See* [Doc. 31-6].

20

does not address its prior reliance—albeit cursory—on the AIU investigation to explain its decision or its subsequent abandonment of this explanation.  [Doc. 34 at 9–10].

"Contradictions or inconsistencies in an employer's proffered reason for termination can be evidence of pretext." *Litzsinger v. Adams Cnty. Coroner's Off.*, 25 F.4th 1280, 1291 (10th Cir. 2022).  "[A] jury can reasonably infer pretext when an employer provides one explanation for an adverse action but later affirmatively disclaims or otherwise abandons the rationale." *Id.*  "But pretext cannot be established by 'the mere fact that the [employer] has offered different explanations for its decision.'" *Id.* (quoting *Jaramillo*, 427 F.3d at 1311) (alterations in original).  To determine whether an employer's change in its explanation can establish pretext, courts look at "(1) the timing of the change in position and (2) the evidentiary basis for the new rationale." *Jaramillo*, 427 F.3d at 1311.  "The timing of the change has been found to support the inference of pretext when it occurs after significant legal proceedings have occurred." *Id.*  This may be the case here, where the Department asserted an explanation for its decision in pre-litigation administrative proceedings but, due to the impossibility of that explanation, abandoned it at some point after a lawsuit was filed.  *See Fassbender v. Correct Care Sols., LLC*, 890 F.3d 875, 887 (10th Cir. 2018) (jury could infer pretext where the employer "continued to change its position even after [the plaintiff] filed a formal EEOC charge against it").

The question before the Court, then, is whether Plaintiff's challenge to two of the Department's reasons for not promoting Plaintiff are together sufficient to create an inference of pretext.  Construing all evidence and drawing all inferences in Plaintiff's favor, and mindful that it is not this Court's role to weigh the strength of Plaintiff's evidence,

*Forth*, 85 F.4th at 1052, the Court finds that this case cannot be resolved at the summary-judgment stage.

To be sure, Plaintiff's evidence of pretext is not robust. Plaintiff's evidence about Sheriff Diggins's (lack of) opportunity to observe him at work does not outright contradict Sheriff Diggins's statement that he personally observed Plaintiff. And the Department's reference to the AIU investigation in its EEOC position statement is cursory at best, and the Department does not reference the investigation at all in its narrative explanation of its promotion decision. *See* [Doc. 31-6 at 4]. Notably, "[m]inor inconsistencies [in the employer's explanation] . . . do not constitute evidence of pretext; . . . only those inconsistencies that allow 'a reasonable factfinder to rationally find the defendant's proffered reason unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons' are probative of pretext." *Hysten v. Burlington N. Santa Fe Ry. Co.*, 415 F. App'x 897, 908 (10th Cir. 2011) (quoting *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997) (cleaned up)). But Defendant fails to explain its shifting position, *see* [Doc. 29; Doc. 34], and the Court cannot make arguments on Defendant's behalf, *Lebahn v. Owens*, 813 F.3d 1300, 1307–08 (10th Cir. 2016).

The Court finds that this evidence, construed in Plaintiff's favor, might "undermine the employer's credibility to the point that a reasonable jury could not find in [the employer's] favor." *Jaramillo*, 427 F.3d at 1310. And as explained above, a plaintiff who has made the minimal showing of pretext typically can survive summary judgment except in two "rare" circumstances: "(1) if 'the record conclusively revealed some other, nondiscriminatory reason for the employer's decision' or (2) if 'the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was

22

abundant and uncontroverted independent evidence that no discrimination had occurred.'" *Jenny,* 144 F.4th at 1198–99 (quoting *Reeves,* 530 U.S. at 148). Even if Plaintiff has created "only a weak issue of fact," the Court cannot conclude that there is "abundant and uncontroverted independent evidence that no discrimination ha[s] occurred." *Id.* Accordingly, the Court will **DENY** the Motion for Summary Judgment. Nevertheless, given its analysis of this action, this Court respectfully **ORDERS** the Parties to engage in alternative dispute resolution before the Honorable N. Reid Neureiter. The Parties shall contact the Chambers of Judge Neureiter no later than **April 9, 2026** to schedule such proceeding.

## CONCLUSION

For the reasons set forth in this Order, **IT IS ORDERED** that:

(1)    Defendant's Motion for Summary Judgment [Doc. 29] is **DENIED**;

(2)    This matter is **REFERRED** to the Honorable N. Reid Neureiter for alternative dispute resolution, subject to his discretion;

(3)    Within three days of completing such alternative dispute resolution and no later than **June 12, 2026**, the Parties shall **FILE** a Joint Status Report advising whether this matter has been resolved or whether this Court should set a Telephonic Status Conference for purposes of setting the Final Pretrial/Trial Preparation Conference and trial.

DATED:  March 26, 2026                    BY THE COURT:

_____
Nina Y. Wang
United States District Judge

23